Karen ELLIOTT, Plaintiff,

v.

Michael G. DONAHUE, Defendant-Appellant-Petitioner,

Supreme Court

*No. 90–2618. Oral argument April 29, 1992.—Decided June 25, 1992.*

(Also reported in 485 N.W.2d 403.)

311

For the defendant-appellant-petitioner there were briefs by *David A. Hudec, Gabrielle Boehm* and *Hudec Law Offices, S.C.,* East Troy and oral argument by *David A. Hudec.*

For the defendant-respondent there was a brief by *Arnold P. Anderson, James W. Mohr, Jr.* and *Mohr, Anderson & McClurg, S.C.,* Hartford and oral argument by *Arnold P. Anderson.*

Amicus curiae brief was filed by *Terrance L. Kallenbach* and *Capwell, Berthelsen, Nolden, Càsanova, Pitts & Kallenbach, Ltd.,* Racine for the Civil Trial Counsel of Wisconsin.

CALLOW, WILLIAM G., J.   This is a review under sec. (Rule) 809.62, Stats., of a published decision of the court of appeals, *Elliott v. Donahue,* 163 Wis. 2d 1059, 473 N.W.2d 155 (Ct. App. 1991). The court of appeals affirmed in part and reversed in part a decision of the circuit court for Walworth County, Judge James L. Carlson, and held among other things that petitioner Michael Donahue was not entitled to recover attorney fees incurred in successfully defending coverage under an insurance policy issued by respondent Heritage Mutual

Insurance Company. We reverse this portion of the decision of the court of appeals and hold that the insured is entitled to recover attorney fees incurred in successfully defending coverage under the insurance policy.

The nature and language of the insurance contract contemplate that the insurer will provide indemnification and defense for claims described in the policy in exchange for periodic premium payments. Under the terms of the policy, the insured's liability to the insurer is limited to the payment of the premium. When the insurer declines to provide insurance coverage thereby forcing the insured to litigate the issue of coverage for a claim that is alleged to fall under the insurance policy, the insured is deprived of the benefit that was bargained for and paid for with the periodic premium payments. We hold that sec. 806.04(8), Stats., which recognizes the principles of equity, permits the recovery of reasonable attorney fees incurred by the insured in successfully establishing coverage.

The relevant facts are not in dispute. On January 16, 1988, Karen Elliott was involved in an automobile accident with several vehicles, one of which was operated by Michael Donahue and owned by David Mikrut. Mikrut's vehicle was uninsured. However, Donahue's stepmother held an insurance policy from Heritage Mutual Insurance Company that covered Donahue while operating another's car "with the reasonable belief of having permission to do so."

On June 3, 1988, Elliott commenced an action against Donahue, the other parties involved in the accident, and their respective insurance companies to recover for injuries sustained in the accident. Donahue tendered his defense to Heritage, who subsequently informed him by letter that it was denying coverage and defense based upon the non-permissive use exclusion in

the policy. Heritage claimed that Donahue did not have Mikrut's permission to operate Mikrut's vehicle. Heritage advised Donahue to hire an attorney at his own expense.

Donahue retained counsel to represent him in the litigation. As a party to the original action, Heritage suggested a bifurcated trial to decide the coverage issue separate from the determination of liability and damages. Judge John Race subsequently ordered a bifurcated trial. However, proceedings on the claim for damages were not suspended pending resolution of the coverage issue. Donahue's counsel represented him on both the claims for damages as well as in the coverage dispute.

A jury returned a verdict finding that Donahue was operating the automobile with the permission of the owner and the circuit court entered a judgment finding that Donahue was covered under the insurance policy issued by Heritage. Heritage immediately assumed Donahue's defense and settled all pending claims against him.

Donahue filed a motion after the verdict to recover from Heritage his actual attorney fees and costs for the litigation. The circuit court denied the motion. Donahue appealed the decision of the circuit court denying him recover for attorney fees and costs to the court of appeals. The court of appeals held that Donahue was entitled to recover costs and reasonable attorney fees incurred in defending himself on the claim for damages. However, it concluded that he was not entitled to attorney fees with respect to the coverage issue because the "American Rule" disallows an award of attorney fees under the theory that each party should be responsible for their own costs of litigation. Furthermore, the court of appeals concluded that the denial of coverage was not in bad faith nor was it unjustified. *Elliott,* 163 Wis. 2d at

1068–69. The sole issue on review concerns whether an insured may recover attorney fees incurred in successfully defending coverage under an insurance policy.

Donahue sets forth several arguments to support his position that an insured is entitled to an award of attorney fees upon successfully defending coverage. First, Donahue argues that Heritage's denial of coverage constituted a breach of its contractual duty to defend and that attorney fees incurred due to that breach are ordinary damages. In response, Heritage argues that it did not breach the insurance contract because a debatable issue of coverage existed in this case and, consistent with the requirements detailed in *Mowry v. Badger State Mut. Cas.*, 129 Wis. 2d 496, 385 N.W.2d 171 (1986), Heritage requested a bifurcated trial to resolve the coverage issue separate from the liability issue. Heritage points out that once coverage was established, it immediately assumed the defense of Donahue.

Whether a party to a contract has breached a contractual provision is a question of law. *Mowry,* 129 Wis. 2d. at 527. Questions of law are decided by this court without deference to the circuit court or the court of appeals. *Id.*

The *Mowry* court addressed a situation similar to the one at hand. In *Mowry,* the insurance carrier denied coverage in a suit against a family member of the insured because a debatable issue existed regarding ownership of the vehicle involved in the accident. The trial court granted the insurer's request for a bifurcated trial and the determination of coverage preceded any proceedings on the issue of liability. Once coverage was established, the insurer settled the claims against the insured. However, the settlement amount exceeded the policy limits. The insured, therefore, brought an action against the

insurer claiming that the insurer breached the contract of insurance by denying coverage and, therefore, should be liable to the insured for the amount of the settlement that exceeded the limits of the policy. The *Mowry* court held that the insurance carrier did not breach its contractual duties of coverage and defense because the issue of coverage was "fairly debatable," the resolution of the coverage issue preceded the trial on liability, and the insurer immediately assumed the insured's defense once coverage was established. *Mowry,* 129 Wis. 2d at 528–29.

An insurer does not breach its contractual duty to defend by denying coverage where the issue of coverage is fairly debatable as long as the insurer provides coverage and defense once coverage is established. In the present case, the issue of coverage was fairly debatable.[1] The Heritage policy provided insurance for Donahue while operating another's automobile only if Donahue reasonably believed that he had permission to drive the

[1]No party in this case argues that Heritage's denial of coverage was in bad faith. In *Anderson v. Continental Ins. Co.,* 85 Wis. 2d 675, 271 N.W.2d 368 (1978), this court explained that the tort of bad faith results from a breach of the insurer's fiduciary duty imposed as a consequence of the relationship established by the insurance contract. *Anderson,* 85 Wis. 2d at 687. "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Id.* at 691. Heritage's denial of the claim in the present instance was not without a reasonable basis. Heritage's insurance policy excluded coverage when the insured was operating a vehicle without the permission of the car's owner. Shortly after the accident, Donahue stated that he did not have permission to drive Mikrut's automobile. One can hardly conclude that under these circumstances, Heritage's initial denial of coverage was in bad faith.

vehicle. Immediately following the accident, Donahue commented to the reporting police officers that he did not have permission to drive Mikrut's vehicle. In light of Donahue's comment, coverage became a viable issue. At trial, the jury concluded that Donahue's comment to the police officers was strategically made and false. As in *Mowry,* once coverage was established, Heritage immediately assumed Donahue's defense. Therefore, we conclude that Heritage did not breach its duty to defend under the insurance contract by initially denying coverage.

Contrary to Heritage's assertion, however, it did not comply with the requirements of *Mowry.* While a bifurcated trial was ordered in this case, the coverage and liability issues were litigated simultaneously, forcing Donahue to retain counsel to simultaneously defend him in both aspects of the case. To be entirely consistent with *Mowry,* the insurer should not only request a bifurcated trial on the issues of coverage and liability, but it should also move to stay any proceedings on liability until the issue of coverage is resolved. Heritage failed to do so. The *Mowry* court advised that an "insurer may need to provide a defense to its insured when the separate trial on coverage does not precede the trial on liability and damages." *Id.* at 528. Because Heritage did not provide such needed defense, it is liable to Donahue for the attorney fees incurred by Donahue with respect to the liability issue. *See Meiser v. Aetna Casualty & Surety Co.,* 8 Wis. 2d 233, 240–41, 98 N.W.2d 919 (1959). The record in this case indicates that Heritage immediately assumed Donahue's defense once coverage was established.

Second, Donahue argues that Heritage is required to reimburse him for attorney fees incurred in successfully

318

defending coverage because the insurance contract provides for payment by the insurer for any "reasonable expenses incurred at *our* request" (emphasis in original). Donahue contends that Heritage's request for a bifurcated trial to obtain a declaratory judgment on coverage amounted to a "request" under the insurance policy which caused Donahue to incur additional expenses. In response, Heritage argues that it never specifically requested Donahue to take any action.

The "Additional Payments" section of the insurance policy issued by Heritage states "*we* will pay, in addition to *our* limit of liability . . . [a]ny other reasonable expenses incurred at *our* request" (emphasis in original). Courts in several other jurisdictions have held that attorney fees are recoverable by the insured in defending against an insurer's declaratory judgment action where the insurance policy provides reimbursement for all reasonable expenses incurred at the request of the insurance company. *See Nordby v. Atlantic Mutual Ins. Co.,* 329 N.W.2d 820 (Minn. 1983); *Upland Mutual Ins. v. Noel,* 519 P.2d 737 (Kan. 1974); and *Occidental Fire & Casualty Co. v. Cook,* 435 P.2d 364 (Idaho 1967). We agree with this line of reasoning. Initiating an action which imposes an obligation on the part of the insured to successfully defend coverage is the equivalent of requesting the insured to incur reasonable expenses. Therefore, the attorney fees incurred by Donahue in successfully defending coverage under the policy represents expenses incurred at Heritage's request. However, we need not rely on this line of reasoning because sec. 806.04(10), Stats., which recognizes the equities of the situation, permits a recovery of attorney fees by the insured.

Third, and finally, Donahue argues that the principles of equity demand that insureds who successfully

defend coverage under an insurance policy recover attorney fees incurred in such defense. He urges this court to fashion an exception to the American Rule to reimburse him for the attorney fees he incurred in successfully establishing coverage. In response, Heritage argues that an insurance contract is no different than any other contract. Heritage asserts that the insured is foreclosed from recovering attorney fees involved in the coverage dispute because the American Rule prohibits an award of attorney fees in the absence of a statute or enforceable contract providing therefor.

The insurance policy represents a unique type of legally enforceable contract. In its simplest form, insurance is a means of transferring the risk of loss from the insured to the insurance company. The insurance company is in the business of evaluating risks, assuming risks in return for periodic premiums, and spreading the costs of the risks.[2]

In return for the premiums paid by the insured, the insurance company assumes the contractual duties of indemnification and defense for claims described in the policy. The insurance policy issued by Heritage specifically provides that "*[w]e* will pay damages for which an *insured person* is legally liable because of *bodily injury* or *property damage* resulting from the ownership, maintenance or use . . . of a car . . ." (emphasis in original). The policy further provides that "*[w]e* will defend any suit or settle any claim for damages as *we* think appropriate" (emphasis in original). An insurance carrier's duty to defend insured in a third-party suit is broader than its duty of indemnification and is predicated on allegations in a complaint which, if proved, would give

[2]*See also Mowry v. Badger State Mut. Cas.*, 129 Wis. 2d 496, 538–39, 385 N.W.2d 171 (1986) (Abrahamson, J., dissenting).

320

rise to recovery under the terms and conditions of the insurance policy. *Sola Basic Industries, Inc. v. U.S. Fidelity & Guaranty Co.,* 90 Wis. 2d 641, 646, 280 N.W.2d 211 (1979). The duty of defense depends on the nature of the claim and has nothing to do with the merits of the claim. *Grieb v. Citizens Casualty Co.,* ·33 Wis. 2d 552, 558, 148 N.W.2d 103 (1967). If there is any doubt about the duty to defend, it must be resolved in favor of the insured. *Sola,* 90 Wis. 2d at 646–47. *See also* Appleman, *Insurance Law and Practice,* sec. 4682 at 27 (Berdal ed. 1979). If the insurance company refuses to defend, it does so at its own peril. Indemnification and defense for claims falling within the parameters of the insurance policy are the two primary benefits received by the insured from a contract of insurance.

The nature of the insurance contract as well as the language of Heritage's insurance policy contemplate that indemnification and defense is provided to the insured in exchange for the insured's premium payments. The policy declares that the policy is nonassessable and, therefore, the insured's liability to the insurance company is limited to the payment of the premium. The "Policy Agreement" section of Heritage's automobile insurance policy states "*[w]e* agree with *you,* in return for *your* premium payment, to insure *you* subject to the terms of this policy" (emphasis in original). Condition 9.c. of the "General Provisions" section of the policy further provides that "[t]his policy is nonassessable. *Your* liability to *us*' is limited to the payment of the premium" (emphasis in original).

A policy of insurance like any other contract is to be construed so as to give effect to the intention of the parties. *Caporali v. Washington Nat. Ins. Co.,* 102 Wis. 2d 669, 675, 307 N.W.2d 218 (1981). The words are to be

construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean. *Id.* A reasonable person in the position of the insured would conclude that under the insurance policy issued by Heritage, the insured should have to pay nothing more than the periodic premium to obtain the benefits of indemnification and defense for claims described in the policy.

The insurer that denies coverage and forces the insured to retain counsel and expend additional money to establish coverage for a claim that falls within the ambit of the insurance policy deprives the insured the benefit that was bargained for and paid for with the periodic premium payments. Therefore, the principles of equity call for the insurer to be liable to the insured for expenses, including reasonable attorney fees, incurred by the insured in successfully establishing coverage.

The equitable considerations are best explained in Appleman, *supra,* sec. 4691 at 281–83 (footnotes omitted):

> Where an insurer failed to defend until after an adverse decision in a declaratory judgment action instituted by it, such insurer was held not liable to pay the attorneys' fees and expenses incurred by the insured in the declaratory judgment action, in the absence of fraud, bad faith, or stubborn litigiousness on the part of the insurer. Some courts have qualified this rule on the assumption that the expenses were incurred at "the request of the insurer" and therefore came within the policy provision for reimbursement of the insured for reasonable expenses, or on the theory that since suit was brought by a third party, the insurer owes a duty to defend. But, despite the qualifications placed upon this rule by the court, it still appears to be unfair to the insured. After all, the

insurer had contracted to defend the insured, and it failed to do so. It guessed wrong as to its duty, and should be compelled to bear the consequences thereof. If the rule laid down by these courts should be followed by other authorities, it would actually amount to permitting the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above. Other courts have refused to impose such a burden upon the insured.

Heritage contends that recovery of attorney fees by the insured is foreclosed by the American Rule. Under the well-established American Rule, parties to litigation are generally responsible for their own attorney fees incurred with respect to the litigation. Attorney fees are generally not awarded to the prevailing party in the absence of a statute or enforceable contract providing therefor. *Kremers-Urban,* 119 Wis. 2d at 744.

In *Kremers-Urban,* this court held that sec. 806.04(10), Stats., which provides authority for the award of costs, does not entitle an insured to recover attorney fees incurred in a declaratory judgment action commenced by the insured against the insurer. *Id.* at 747. Kremers-Urban, the insured in that case, commenced a declaratory judgment action against its liability insurance carrier for a determination of whether certain claims against Kremers-Urban were covered by the insurance policy. Kremers-Urban successfully estab-

323

lished coverage and sought recovery of attorney fees under sec. 806.04(10), Stats., of the Uniform Declaratory Judgments Act. Section 806.04(10) provides:

> Costs. In any proceeding under this section the court may make such award of costs as may seem equitable and just.

Relying on the premise that the legislature is presumed to have acted with knowledge of the American Rule, which prohibits an award of attorney fees unless expressly authorized by statute, the *Kremers-Urban* court refused to allow recovery of attorney fees under sec. 806.04(10) because there is a distinction between costs and attorney fees. *Kremers-Urban,* 119 Wis. 2d at 746. However, the *Kremers-Urban* court limited its inquiry to sec. 806.04(10) and stated, "[w]e take no position on whether attorney's fees are allowed under any other subsection of the declaratory judgments act." *Id.* at 747. We now conclude that sec. 806.04(8), Stats., permits a recovery of attorney fees in this case because the recovery is proper under the principles of equity.

Section 806.04(8), Stats., provides:

> Supplemental relief. Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

We conclude that the supplemental relief under sec. 806.04(8) may include a recovery of attorney fees incurred by the insured in successfully establishing coverage under an insurance policy. Therefore, we need not

324

fashion an exception to the American Rule because the statute permits an award of attorney fees.[3]

Heritage also contends that allowing recovery of attorney fees by the insured when the insured successfully defends coverage will deter insurance companies from litigating appropriately triable issues. We are not convinced that our holding in this case will deter an insurance company from contesting coverage where coverage is a fairly debatable issue. Rather, our holding today merely preserves for the insured the benefit of indemnification and defense that was contracted and paid for under the contract of insurance.

■■■

For the foregoing reasons, the decision of the court of appeals is reversed and the case is remanded to the circuit court for a determination of the reasonable attorney fees incurred by Donahue in successfully defending coverage under the insurance policy issued by Heritage.

*By the Court.*—The decision of the court of appeals is reversed and the case is remanded.

STEINMETZ, J. *(dissenting)*. The majority's decision makes an insurance company take calculated and expensive risks should it decide to deny coverage, no matter how bizarre the facts, because it is possible that it will be responsible for the attorney fees of the other side if the company loses on the issue.

---

[3]The contract of insurance does not contemplate that the insurer should recover attorney fees from the insured even if the insurer prevails in the declaratory judgment action. The insurer has provided no benefit to the insured which would justify recovering the costs of litigation from the insured. Furthermore, the insurer can more easily absorb the expenses of litigation than the insured.

It is clear that a liability insurer has a contractual duty to defend its insured in an action for damages. *See Gross v. Lloyds of London Ins. Co.,* 121 Wis. 2d 78, 84, 358 N.W.2d 266 (1984). However, when the coverage trial precedes a trial on liability and damages, the insurance company is not required to provide a free defense.

In the case of *Mowry v. Badger State Mut. Cas.,* 129 Wis. 2d 496, 385 N.W.2d 171 (1986), Badger State initially denied coverage but it expressly assumed the defense of the insured after the coverage trial and after a jury determined that coverage existed. In *Mowry,* we concluded that Badger was not required to provide a free defense because the coverage trial preceded a trial on liability and damages. That is exactly what happened in the present case. Thus, Heritage is required to provide a defense only after a final determination on coverage is made.

The declaratory judgment statute, sec. 806.04(8), Stats., for supplemental relief does not include the awarding of attorney fees. The majority, without support, reads attorney fees into that section. Declaratory judgment cases are treated as any other causes of action. Each side is required to pay its own attorney fees until Wisconsin adopts a different rule. There are some statutes which specifically allow attorney fees to the winning side, but this is not one.

Walworth county circuit court Judge James L. Carlson correctly concluded that attorney fees were not appropriate in this case. He stated:

> I think the *Mowry* case does in fact stand for the proposition that in the absence of bad faith, the attorney for the insurance company is entitled to try out the coverage issue without basically being—I forget what the wording is—blackmailed or whatever the language was there, and in that case it quite sim-

326

ply said when the insurance company follows that procedure and there's a meritable defense to the coverage issue, and I certainly think that's the case here—I think certainly a stronger case perhaps than the *Mowry* case based on this conflicting statement. Certainly I don't think there's any way the Court can grant other than the statutory attorney fees.

The facts that developed from the investigation certainly entitled Heritage to deny coverage and have the issue determined first at trial.[1] Even Donahue's attorney admitted at oral argument that Heritage's denial of coverage was done in good faith. I contend that even if the insured wins the case, the insured should not automatically be entitled to attorney fees. This should be true particularly when the insurance company acts in good faith.

The majority quotes from Appleman, *Insurance Law & Practice*, sec. 4691 at 281–83 (Berdal ed. 1979) to explain equitable considerations. Majority op. at 322–323. Appleman states that some courts have required insurance companies to pay insured attorney fees based on "the assumption that the expenses were incurred at *'the request of the insurer'* and therefore came within the policy provision for reimbursement of the insured for reasonable expenses, or on the theory that since suit was brought by a third party, the insurer owes a duty to defend." *Id.* (Emphasis added.) The majority, however, fails to discuss what is actually stated

---

[1]The insurance company's investigation showed that Donahue's drivers license had been revoked for almost a year. Both Donahue's father and stepmother had told Donahue not to drive. The car owner's brother heard the owner tell Donahue he was not to use the car on the day of the accident. At the scene of the accident Donahue admitted to investigating police officers that he did not have permission to drive the car.

in the policy and agreed upon by the parties. Appleman deals with equitable relief, whereas, here we are applying a contract.

Certainly, in the instant case, to state that Heritage "requested" Donahue to obtain the services of an attorney in the coverage issue is unfounded and a misuse of language. First, the word "request" is not in the relevant portion of the policy. Second, "request" is defined in Webster's Third New International Dictionary (1967) as follows: "request . . . the act of asking for something as an object, a favor, or some action desired." Heritage did not "ask" Donahue to obtain the services of an attorney.

On the other hand, the word "advise" is found in the appropriate portion of the policy and is therefore the appropriate term to apply to this case. Webster's Dictionary defines the term "advise" as follows: "to give advice, to counsel . . . caution, warn." The difference between the term "request" and "advise" is obvious. They are not even close in meaning, and one cannot be substituted for the other. The majority opinion is therefore in error.

The majority's unequitable exception to the American rule now offers insurance companies only a theoretical right to have coverage determined before liability attaches to the policy. Perhaps it would have been better if the majority had declared that the American rule regarding attorney fees was no longer controlling and allowed the victor in all litigation to be entitled to recover attorney fees. The majority attempts to draw a distinction between insurance companies and all other litigants but does not recognize that a company is a conglomeration of its policyholders.

Heritage was at all times ready to pay attorney fees incurred by the insured on liability discovery and, therefore, the discussion of staying the liability issue as in

*Mowry* in no way affects the case as the majority implies.

For the reasons set forth above, I dissent and would affirm the judgment of the circuit court for Walworth County by denying attorney fees to Michael Donahue.