DELTA GROUP, INC., a Wisconsin corporation, Plaintiff-Appellant,

v.

DBI, INC., a Wisconsin corporation, Defendant,†

MARYLAND CASUALTY COMPANY, a foreign insurance corporation, Defendant-Third Party Plaintiff-Respondent,

v.

V. OLSON CONTRACTORS, INC., AAA Insurance Company, American Asphalt Paving, Inc., BBB Insurance Company, Custom Excavators, Inc. and CCC Insurance Company, Third Party Defendants.

Court of Appeals

*No. 95–2044. Oral argument August 15, 1996.—Decided September 25, 1996.*

(Also reported in 555 N.W.2d 162.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs and oral argument of *Ronald L. Wallenfang* of *Quarles & Brady* of Milwaukee.

On behalf of the defendant-third party plaintiff-respondent, the cause was submitted on the briefs of *John T. Juettner* and *Kathleen A. Rinehart* of *Clarkson, Crivell, Mentkowski & Steeves, S.C.* of Milwaukee. There was oral argument by *Timothy F. Mentkowski.*

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J. Delta Group, Inc. (Delta), appeals from orders dismissing its breach of contract claim against Maryland Casualty Company (Maryland) for failure to prosecute.[1] On appeal, Delta argues that Maryland breached its duty to defend its insured, DBI, Inc., and Maryland subsequently lost its right to reopen and contest the damages award made by the arbitrator. Since DBI assigned its rights to Delta, Delta maintains it is now entitled to summary judgment against Maryland for the amounts in the arbitration award.[2] We conclude that Maryland

---

[1] Delta's notice of appeal only contests the order for dismissal entered on June 21, 1995. However, earlier in the litigation, Delta and Maryland filed summary judgment motions; both were denied by order of the trial court dated September 16, 1993. Delta appeals from this order as well.

[2] Delta entered into a partial settlement agreement dated November 18, 1992, with DBI, Maryland's insured. DBI performed its obligation pursuant to the settlement agreement

517

breached its duty to defend and is therefore bound by the terms of the arbitration agreement.[3] Accordingly, we reverse and remand.[4]

In February 1990, Delta entered into a contract with DBI for the design and construction of a new office and smelting facility, including site work. The construction was completed in 1990. Within one year of the construction, substantial deterioration occurred both on site and with the building. The deterioration included corrosion of the building walls, the asphalt drives failed to withstand anticipated wear and tear, and the location of driveways and design of loading docks failed to allow adequate clearance for the loading and unloading of tractors and trailers.

On August 6, 1991, before litigation was commenced, DBI filed a general liability loss notice with Maryland. Maryland investigated the "claim under a Reservation of Rights." Maryland concluded, and notified DBI by letter dated September 24, 1991, that the damages qualified as work-product and were excluded under the policy. Maryland "disclaim[ed] coverage for this claim."

---

and paid the $30,000 required to secure the release. Accordingly, we entered an order on October 11, 1995, removing DBI as a respondent on appeal.

[3] At oral arguments, Delta waived any claim to attorney's fees.

[4] Because of our resolution of the summary judgment motion, the remaining issues—whether Delta failed to prosecute under § 805.03, STATS., and whether Delta was entitled to an adjournment due to a grand jury investigation involving Delta's employees and records—are rendered moot and we need not address them. *See Skrupky v. Elbert*, 189 Wis. 2d 31, 47, 526 N.W.2d 264, 270 (Ct. App. 1994) (if a decision on another point disposes of the appeal, the appellate court will not decide other issues raised).

On January 15, 1992, Delta filed suit against DBI alleging breach of contract and negligence. DBI denied the allegations and moved to stay the proceedings until arbitration occurred in accordance with the terms of the agreement. As per the contract, the parties stipulated to stay the disposition of the case pending arbitration in July 1992. It was agreed that Delta had until September 1, 1992, to join any insurance company as a party to the action.

On August 31, 1992, Delta filed an amended complaint, joining Maryland as a party to the action. Maryland denied the allegations. Delta and DBI were then referred to arbitration which was set for April 6, 1993, with a mediation date set for October 19, 1992. The trial court had also set a scheduling conference for November 24, 1992. Maryland received notice of these meetings, but only attended the scheduling conference.

On November 15, 1992, DBI signed a partial settlement agreement allowing the entry of a default arbitration award, not to exceed $600,000, to be entered against it. Under the agreement, DBI agreed to pay $30,000 and Delta agreed to execute the remainder of the award against the proceeds of DBI's insurance policy. DBI also assigned "any and all claims, causes of action, and rights it may have against Maryland" to Delta. The arbitration award effectuating the settlement was signed on November 23, 1992.

On April 15, 1993, Delta moved for summary judgment against Maryland in the amount of $600,000, plus twelve percent interest, and costs and attorney's fees. Maryland also moved for summary judgment against Delta declaring the claimed damages were excluded under its policy and Maryland had no duty to defend. The trial court concluded that Maryland did not breach its duty to defend DBI as to Delta, but that

Maryland must defend DBI for other nonwork-product damages and for the faulty work performed by the subcontractors. Accordingly, the trial court denied both motions for summary judgment in an order dated September 16, 1993.

On January 3, 1994, Maryland filed a third-party complaint against the subcontractors involved in the construction of the smelting facility. After protracted discovery and numerous motions to compel, Delta moved for an adjournment due to a grand jury investigation of Delta which involved several potential witnesses and records necessary in this civil action in April 1995. In May 1995, both Maryland and American Asphalt Paving, Inc., a third-party defendant, moved to dismiss for Delta's failure to prosecute. The trial court concluded that Delta failed to show a nexus between the criminal matters that might be pending and Delta's civil claim and therefore granted the motion to dismiss as to American Asphalt and as to Maryland. Delta appeals.

Delta's principal contention is that it is entitled to summary judgment because Maryland breached its duty to defend DBI and is now liable for the amount due as a result of the default arbitration award. We review a motion for summary judgment using the same methodology as the trial court. *M & I First Nat'l Bank v. Episcopal Homes*, 195 Wis. 2d 495, 496, 536 N.W.2d 175, 182 (Ct. App. 1995); § 802.08(2), STATS. That methodology is well known, and we will not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See M & I First Nat'l Bank*, 195 Wis. 2d at 496-97, 536 N.W.2d at 182; *see also* § 802.08(2).

Prior to addressing the duty to defend claim, we must first determine whether Delta has standing to seek enforcement of the arbitration award against Maryland. The application of undisputed facts to a legal standard is a question of law which we review independently. *See Towne Realty, Inc. v. Zurich Ins. Co.*, 201 Wis. 2d 260, 267, 548 N.W.2d 64, 66 (1996).

DBI and Maryland had a policy for commercial general liability insurance. On November 18, 1992, DBI agreed to assign to Delta "any and all claims, causes of action, and rights it may have against Maryland Casualty Co., arising out of or related in any way to the Case." An assignee of a cause of action stands in the shoes of the assignor. *Newhouse v. Citizens Sec. Mut. Ins. Co.*, 170 Wis. 2d 456, 464, 489 N.W.2d 639, 641 (Ct. App. 1992), *rev'd on other grounds,* 176 Wis. 2d 824, 501 N.W.2d 1 (1993). This principle has been applied in the context of insurance coverage. *See id.* at 464-66, 489 N.W.2d at 641-42. Accordingly, we conclude that Delta does have standing to enforce the arbitration agreement against Maryland.

Now we turn to the alleged breach of the duty to defend. Delta contends that Maryland breached its duty to defend by failing to move to bifurcate the coverage and liability issues, or otherwise protect DBI's interest while contesting coverage. Maryland counters that DBI failed to tender a defense, and once suit was filed, Maryland informed Delta that coverage was disputed and would be addressed before the trial court.

Determining if an insurance company has a duty to defend is a question of law that we review de novo and without deference to the trial court. *Grube v. Daun*, 173 Wis. 2d 30, 72, 496 N.W.2d 106, 122 (Ct. App. 1992). In Wisconsin, an insurer's duty to defend is predicated on the allegations in the complaint. *See Elliott v. Donahue*, 169 Wis. 2d 310, 320-21, 485 N.W.2d 403, 407 (1992). The duty of defense depends on the nature of the claim, not the merits, and any doubts must be resolved in favor of the insured. *Id.* at 321, 485 N.W.2d at 407. If the insurance company refuses to defend, it does so at its own peril. *Id.*

We conclude that Delta's October 2, 1992, letter coupled with DBI's 1991 notice of loss and Delta's 1992 amended complaint, which joined Maryland as a party, are controlling. In August 1991, DBI filed a general liability loss of notice with Maryland. Maryland investigated the claim. By September 1991, Maryland had denied the claim concluding that the claimed damages fell under DBI's work-product exclusion. On August 31, 1992, Delta filed an amended complaint joining Maryland as a party to the suit. Delta alleged that Maryland's insurance policy provided coverage for some or all of the damages claimed against DBI entitling Delta to judgment in an amount determined in arbitration, or based upon the provisions of the policy. [5]

---

[5] Maryland's policy provided that the insurer had the right and duty to defend any "suit" seeking damages. "Suit" is defined in the policy as a civil proceeding in which damages, caused by property damage, were alleged and also included "an arbitration proceeding in which such damages are claimed . . . ."

The next correspondence of record was Delta's October 2, 1992, letter to Maryland. The pertinent portions of the letter read:

> The issues between Delta Group, Inc. and DBI, Inc. have been referred to arbitration . . . [which] is set for April 6, 1993 . . . .
>
> You should also be aware that there is a conciliation conference with Judge Decker set for Monday, October 19, 1992, . . . I would both invite and encourage you to attend.
>
> . . . .
>
> One solution you may wish to consider is having the policy issues decided in the same arbitration as the underlying issues. I recognize that would require your consent, because Maryland Casualty has not agreed to arbitrate. However, if you don't participate, and don't offer DBI a defense, why wouldn't you be bound by whatever relevant factual findings are made by Judge Decker?

Then in an October 15, 1992, correspondence, Delta informed Maryland that it would be seeking damages not only for DBI's work-product, but also for repair work, interference with production and increased processing costs from iron mixing with the aluminum.

At this point, it is unclear whether DBI required a defense. However, there is no doubt that as of October 2, 1992, Maryland had notice that a suit had been initiated and that DBI may have required a defense. A tender of defense occurs once an insurer has been put on notice of a claim against the insured. *Towne Realty*, 201 Wis. 2d at 267, 548 N.W.2d at 67. "[I]f it is unclear or ambiguous whether the insured wishes the insurer to defend the suit, it becomes the responsibility of the insurer to communicate with the insured before the

insurer unilaterally forgoes the defense." *Id.* at 269, 548 N.W.2d at 67. An insurer cannot simply "assume" that the insured does not need a defense; rather, "it has an affirmative duty to specifically determine that a defense is not desired." *Id.* at 270, 548 N.W.2d at 68.

Despite its clear obligation to resolve the coverage issues, Maryland took the position that "it is in the best interest of all involved to continue with discovery focusing on the issues of insurance coverage." Under existing law, this position is untenable. We conclude that as of October 2, 1992, Maryland had an obligation to resolve the coverage issue as soon as possible—at a minimum, it was required to attend the conciliation meeting to protect its own interests.

We also reject Maryland's position that *Towne Realty* should not be applied retroactively in this case. We first note the difference between *Towne Realty* and this case: the foremost issue in *Towne Realty* was the sufficiency of the tender of the defense, not the question of coverage. *See id.* at 266-67, 548 N.W.2d at 66. Moreover, we interpret *Towne Realty* as simply restating and clarifying well-established law under *Grieb v. Citizens Casualty Co.*, 33 Wis. 2d 552, 557-58, 148 N.W.2d 103, 106 (1967); *Professional Office Bldgs. v. Royal Indem. Co.*, 145 Wis. 2d 573, 580-81, 427 N.W.2d 427, 430 (Ct. App. 1988); *Elliott*, 169 Wis. 2d at 320-21, 485 N.W.2d at 407; *Grube*, 173 Wis. 2d at 72-76, 496 N.W.2d at 122-23; and *Newhouse v. Citizens Sec. Mut. Inc. Co.*, 176 Wis. 2d 824, 836, 501 N.W.2d 1, 5-6 (1993). Under this line of cases, once notified of a suit, the insurer has a duty to immediately seek a determination of the coverage issue. *See Professional Office Bldgs.*, 145 Wis. 2d at 585, 427 N.W.2d at 431. Where coverage is disputed, the insurer should

"request a bifurcated trial on the issues of coverage and liability and move to stay any proceedings on liability until the issue of coverage is resolved." *Newhouse*, 176 Wis. 2d at 836, 501 N.W.2d at 6; *see also Grube*, 173 Wis. 2d at 75-76, 496 N.W.2d at 123-24. If the insurer follows this procedure, then it does not run the risk of breaching its duty to defend. *Newhouse*, 176 Wis. 2d at 836, 501 N.W.2d at 6.

Maryland also argues, based upon Delta's October 6, 1992, correspondence to Judge Murphy, that there was a tacit understanding that the "interplay between the arbitration and the coverage issues" would be discussed at the November 24, 1992, conference with the judge. However, Maryland did not raise this argument before the trial court, nor in the briefs on appeal. So this contention, advanced during oral arguments before this court, is held to have been waived and we decline to consider it. *Sturgis v. Margetts*, 47 Wis. 2d 733, 735, 177 N.W.2d 609, 609-10 (1970).

Even if the parties had a "tacit understanding" to address the coverage issues at a later date, *Grube* makes it crystal clear that Maryland could not rely on an understanding instead of raising the issue in court. *See Grube*, 173 Wis. 2d at 75, 496 N.W.2d at 123. Maryland was required to solemnize this understanding not only with Delta, but with its insured as well. Otherwise, it would run the risk of breaching its duty to defend and could be held liable to its insured for all damages that naturally flow from the breach. *Newhouse*, 176 Wis. 2d at 837, 501 N.W.2d at 6.

As a final matter, we conclude that as of October 2, 1992, Maryland had more than sufficient notice that a

suit had been initiated and that it was obligated to clarify DBI's position on a defense. Maryland denied coverage based upon the belief that the claims contained in the complaint were not covered by the insurance policy. Refusing to defend is a breach of the insurer's obligation under the contract. As a result, the insured is not bound to his or her contractual duty to allow the insurer to control the defense. *Grube*, 173 Wis. 2d at 76, 496 N.W.2d at 124. Therefore, we conclude that Maryland is bound by DBI's agreement to entry of the default arbitration award in the amount of $600,000 and DBI's assignment of its rights to Delta to collect this amount.

Accordingly, we reverse the trial court's order granting Maryland's motion to dismiss for failure to prosecute. We further reverse the trial court's order denying Delta's summary judgment motion for damages and we remand.

*By the Court.*—Orders reversed and cause remanded.