NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued November 2, 2006
Decided January 9, 2007

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

| | |
|---|---|
| No. 06-1704 | Appeal from the United States District Court for the Western District of Wisconsin |
| Acme United Corporation, | |
| *Plaintiff-Appellant,* | No. 05 C 384 |
| *v.* | **Barbara B. Crabb**, *Chief Judge.* |
| St. Paul Fire & Marine Insurance Company, | |
| *Defendant-Appellee.* | |

**O R D E R**

Acme United Corp. ("Acme") was sued by one of its competitors, Fiskars Brands, Inc. ("Fiskars"), for allegedly making false and disparaging statements about Fiskars' products in its advertising.  Acme tendered the Fiskars lawsuit to its commercial insurer, St. Paul Fire and Marine Insurance Co. ("St. Paul"), but St. Paul denied Acme's request for coverage and disclaimed any duty to defend.  After settling with Fiskars, Acme sued St. Paul to recover the costs of its defense.  The

district court granted summary judgment in favor of St. Paul.  Acme appeals.  We reverse and remand for entry of summary judgment in favor of Acme and for a determination of damages.

I.

Acme is one of the world's largest manufacturers of scissors and paper trimming products.  Beginning in 2000, and continuing through December 31, 2004, St. Paul sold to Acme a continuous series of commercial general liability insurance policies ("the Policy").  On June 14, 2004, Fiskars, one of Acme's competitors in the scissors and paper trimming products industry, sued Acme in federal court alleging that Acme made false statements on its products' packaging. Fiskars claimed that Acme made false or misleading statements about its scissors and paper trimmers by stating on its products' packaging that its scissors and paper trimmers were bonded with titanium, which made them superior to stainless steel scissors and paper trimmers that were not bonded with titanium.  Specifically, Fiskars' underlying complaint alleged:

> 7.  Acme has caused certain of its scissors for adults and children to enter commerce with false or misleading descriptions and representations in that Acme advertises on certain scissors and product packaging for certain scissors that they are "Titanium" or "Titanium Bonded," have a titanium cutting edge, that they are "3 times harder than stainless steel," that they "stays (sic) sharper longer" and are "non-corrosive" . . . that the "blades stay sharp, longer" . . . and that "Acme uses a process that bonds titanium to a stainless steel core to produce a sharper, more durable and longer lasting cutting edge."
>
> . . .
>
> 9.  The advertisements . . . are false and misleading description of fact . . . . The scissors and paper trimmers blades have only a negligible and immaterial amount of titanium, which is not on the cutting edge, and does not make the scissors harder, sharper, more durable, or longer lasting.
>
> 10.  The . . . [f]alse [a]dvertisements were intended to and did deceive a substantial segment of the target audience . . . . The false advertisements were calculated and likely to influence purchasers' decisions on whether to purchase scissors and paper trimmers

manufactured by Fiskars, or scissors or paper trimmers manufactured by Acme.

. . .

12. Acme made the . . . [f]alse [a]dvertisements intending to divert trade away from Fiskars, which has occurred.

13. Because of the . . . [f]alse [a]dvertisements, Fiskars has suffered and will continued to suffer a loss of sales and profits that it would have otherwise made.

(Underlying Compl. ¶¶ 7, 9, 10, 12, 13.)

On June 25, 2004, Acme tendered the Fiskars lawsuit to St. Paul. The Policy defined St. Paul's right and duty to defend as follows:

**Advertising injury liability**. We'll have the right and duty to defend any protected person against a claim or suit for injury or damage covered by this agreement. We'll have such right and duty even if all of the allegations of the claim or suit are groundless, false, or fraudulent. But we won't have a duty to perform any other act or service.

(Policy at 4-5 (bold in original).) With respect to "advertising injury liability," the Policy provided coverages as follows:

We'll pay amounts any protected person is legally required to pay as damages for covered advertising injury that:

- results from the advertising of your products, your work, or your completed work; and
- *is caused by an advertising injury offense* committed while this agreement is in effect.

(Policy at 4 (emphasis added).) It defined "advertising injury" as: "Other than bodily injury or personal injury, that's caused by an advertising injury offense." (Policy at 4.) The Policy defined "advertising injury offense" as, among other things, "[m]aking known to any person or organization covered material that *disparages* the business, premises, *products*, services, work, or completed work *of others*." (Policy at 4 (emphasis added).)

In a letter dated July 16, 2004, St. Paul denied Acme's request for coverage and disclaimed any duty to defend, stating: "While Fiskars alleges false advertising, those allegations do not involve an advertising injury offense." Acme responded by sending a second letter to St. Paul, asking it to reconsider its decision not to defend Acme against Fiskars' lawsuit. St. Paul again rejected Acme's request, stating in a letter dated December 1, 2004 that, "[a]t this point, St. Paul believes that the facts and law, including that cited by Acme, reflect that the coverage determination is well founded and that there is no duty to defend the Fiskars action."

Acme retained its own counsel after St. Paul refused to defend it. It ultimately settled the Fiskars lawsuit, but not before it incurred $180,000 in legal expenses, including its attorneys' fees, costs, and expert witness fees. Acme sought to recover its expenses by bringing the instant suit against St. Paul in the United States District Court for the Western District of Wisconsin for breaching its duty to defend.[1] Acme and St. Paul filed cross-motions for summary judgment. The district court granted summary St. Paul's motion and denied Acme's motion, and held that St. Paul did not owe a duty to defend Acme. Acme appeals.

II.

On appeal, Acme argues that the district court erred by denying its motion for summary judgment and granting St. Paul's motion summary judgment, because Fiskars' underlying complaint contained allegations that fell within the Policy's definition of an "advertising injury offense," which triggered St. Paul's duty to defend Acme. There are no disputed material facts. The district court's decision whether to grant or deny the parties' cross-motions for summary judgment turned entirely on whether Fiskars' underlying complaint alleged an "advertising injury offense" under the Policy. We review this question of law de novo, applying Wisconsin law.[2] *Carney v. Vill. of Darien*, 60 F.3d 1273, 1276-77 (7th Cir. 1995)

---

[1] Acme invoked the district court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the parties were diverse and the amount in controversy exceeded $75,000. Acme is incorporated in and maintains its principal place of business in Connecticut, while St. Paul is incorporated in and maintains its principal place of business in Minnesota.

[2] In its choice of law analysis, the district court applied Wisconsin's most significant relationship test and determined that Connecticut law should apply. *See State Farm Mut. Auto. Ins. Co. v. Gillette*, 641 N.W.2d 662,670-71 (Wis. 2002) ("In contractual disputes, Wisconsin

(continued...)

(interpreting Wisconsin law) ("The determination of whether an insurance company owes a duty to defend is a question of law reviewed de novo and without deference to the trial court."); *see also 1325 N. Van Buren, LLC v. T-3 Group, Ltd.*, 716 N.W.2d 822, 831 (Wis. 2006) ("[W]hether an insurance policy affords coverage and whether an insurer has a duty to defend are questions of insurance contract interpretation subject to de novo review.").

Under Wisconsin law, "an insurer's duty to defend is predicated on the allegations in the complaint." *Delta Group, Inc. v. DBI, Inc.*, 555 N.W.2d 162, 165 (Wis. Ct. App. 1996) (citing *Elliott v. Donahue*, 485 N.W.2d 403, 407 (Wis. 1992)); *see also Employers Mut. Cas. Co. v. Horace Mann Ins. Co.*, 707 N.W.2d 280, 283 (Wis. Ct. App. 2005) ("To determine whether there was a duty to defend, we compare the allegations in the complaint to the relevant portions of the insurance policy."). "The insurer has a duty to defend whenever the allegations in the complaint, if proven, create a possibility of recovery that falls under the terms and conditions of the insurance policy." *Employers Mut. Cas. Co.*, 707 N.W.2d at 283. "The duty of defense depends on the nature of the claim, not the merits, and any doubts must be resolved in favor of the insured." *Delta Group, Inc.*, 555 N.W.2d at 165 (citing *Elliott*, 485 N.W.2d at 407). Accordingly, we will examine the allegations in Fiskars' underlying complaint to determine whether they fall within the Policy's definition of an "advertising injury offense."

We begin our analysis by looking to the Policy's operative terms to determine whether they are ambiguous. *Folkman v. Quamme*, 665 N.W.2d 857, 864 (Wis. 2003) ("[T]he first issue in construing an insurance policy is to determine whether an ambiguity exists regarding the disputed coverage issue."). The same rules of construction that govern general contracts apply to the interpretation of the terms of insurance polices, *id.*, thus we must construe the Policy's terms as they would be understood by a reasonable person in the position of the insured and to give its terms their common and ordinary meaning, *Midway Motor Lodge of Brookfield v.*

---

[2](...continued)
courts apply the 'grouping of contacts' rule, that is, that contract rights must be 'determined by the law of the [jurisdiction] with which the contract has its most significant relationship.'" (footnote and citations omitted)). However, the district court ultimately, and correctly, applied Wisconsin law after it found that Connecticut and Wisconsin law are identical regarding interpretation of this type of insurance contract. *See Sharp v. Case Corp.*, 595 N.W.2d 380, 384 (1999) ("If the laws of the two states are the same, we apply Wisconsin law."); *see also Deminsky v. Arlington Plastics Machinery*, 657 N.W.2d 411, 420 (Wis. 2003) (same). The parties do not contest the choice of law on appeal.

*Hartford Ins. Group*, 593 N.W.2d 852, 855 (Wis. Ct. App. 1999). The Policy defined an "advertising injury offense" to include "[m]aking known to any person or organization covered material that *disparages* the . . . products . . . of others." (Policy at 4 (emphasis added).) The operative term here is "disparage." Disparage means "to discredit or bring reproach upon by comparing with something inferior." *Webster's Third New International Dictionary (unabridged)* 653 (1981); *see also Black's Law Dictionary* 483 (7th ed. 1999) (defining disparage as "[t]o dishonor (something or someone) by comparison" or "[t]o unjustly discredit or detract from the reputation of (another's property, product, or business)"). Further, as we have noted in previous cases, disparagement [could] result[] from false comparisons" between products in which the comparison dishonors the product being compared. *See, e.g.*, *Skylink Techs., Inc. v. Assurance Co. of Am.*, 400 F.3d 982, 985 (7th Cir. 2005) (citing *McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988)). We find the term "disparage," as it is used in the Policy, to be clear and unambiguous.

Next, we examine the allegations in Fiskars' underlying complaint to the determine whether Fiskars alleged that Acme disparaged its products, and thus alleged an "advertising injury offense" which triggered St. Paul's duty to defend. *See Employers Mut. Cas. Co.*, 707 N.W.2d at 283. In its underlying complaint, Fiskars alleged that Acme's products' packaging stated that Acme's products are "3 times harder than stainless steel," that they "stays (sic) sharper longer" and are "non-corrosive" . . . that the "blades stay sharp, longer" . . . and that "Acme uses a process that bonds titanium to a stainless steel core to produce a sharper, more durable and longer lasting cutting edge." (Underlying Compl. ¶ 7.) These allegations clearly alleged that Acme's advertisements drew a comparison between its products and stainless steel products and asserted that Acme's products were superior because they contain titanium. Fiskars' underlying complaint also alleged that Acme's comparison was false, because Acme's "scissors and paper trimmers blades have only a negligible and immaterial amount of titanium, which is not on the cutting edge, and does not make the scissors harder, sharper, more durable, or longer lasting." (Underlying Compl. ¶ 9.) We, like the district court, conclude that these allegations sufficiently alleged that Acme disparaged stainless steel scissors and paper trimmers.

The district court nonetheless denied Acme's motion for summary judgment and granted St. Paul's motion for summary judgment because it concluded that the advertisements, while disparaging stainless steel products, did not disparage

Fiskars products.[3]  The district court reasoned that because the Policy defined an
"advertising injury offense" as "disparag[ing] the . . . products . . . *of others*," the
advertisement must identify specifically the other brand and not merely other types
or classes of products.  Because Acme's advertisement did not name Fiskars or any
of Acme's other competitors, the district court concluded that Fiskars did not allege
an "advertising injury offense" and that St. Paul did not owe Acme a duty to defend.
The district court's coverage analysis was incomplete, however, because it looked
only to the text of Acme's advertisements and did not consider whether Fiskars'
other allegations in the underlying complaint alleged that Acme disparaged Fiskars'
products.

In determining whether coverage exists under an insurance contract, we
must confine our reasoning to the allegations within the four corners of the
complaint, and evaluate whether those allegations, "if proven, create a possibility of
recovery that falls under the terms and conditions of the insurance policy."
*Employers Mut. Cas. Co.*, 707 N.W.2d at 283.  While Fiskars did not allege that
Acme actually named Fiskars' products in the text of its advertisements, Fiskars'
underlying complaint specifically alleged that Acme's advertisements were directed
at Fiskars' products and that Fiskars lost sales to Acme as a result.  For example,
Fiskars alleged that Acme's "false advertisements were calculated and likely to
influence purchasers' decisions on *whether to purchase scissors and paper trimmers
manufactured by Fiskars*, or scissors or paper trimmers manufactured by Acme."
(Underlying Compl. ¶ 10 (emphasis added).)  Fiskars also alleged that "Acme made
the Scissors False Advertisement and Trimmer False Advertisement *intending to
divert trade away from Fiskars*, which has occurred."  (Underlying Compl. ¶ 12
(emphasis added).)  Finally, Fiskars alleged that "[b]ecause of the Scissors False
Advertisements and Trimmer False Advertisements, *Fiskars has suffered and will
continued to suffer a loss of sales and profits that it would have otherwise made*."
(Underlying Compl. ¶ 13 (emphasis added).)  Based on these allegations, and
resolving all doubts in favor of Acme, we conclude that Fiskars' underlying
complaint sufficiently alleged that Acme's advertisements were directed at Fiskars'
products and that Acme disparaged Fiskars products though a false comparison
between its products and Fiskars' products.  Accordingly, Fiskars' underlying
complaint alleged an "advertising injury offense."[4]  Therefore, St. Paul owed Acme a

_____

[3] Like the district court, we draw the reasonable inference that Fiskars sells stainless steel
scissors and trimmers, despite Fiskars' failure to plead that fact in its underlying complaint.

[4] We need not determine whether an advertisement, standing alone, must specifically

(continued...)

duty to defend it against Fiskars' underlying complaint and the district court should have granted summary judgment in favor of Acme instead of St. Paul.

III.

The district court erred when it found that St. Paul did not owe Acme a duty to defend under the Policy because Fiskars' underlying complaint alleged an "advertising injury offense," thus invoking St. Paul's duty to defend Acme. Therefore, we REVERSE the district court's grant of summary judgment in favor of St. Paul and REMAND this case to the district court with instructions to enter summary judgment in favor of Acme and determine the appropriate damages to which Acme is entitled.

---

[4](...continued)
name another producer or its product to "disparage the . . . products . . . of others," because Fiskars' underlying complaint contained numerous allegations that the alleged false comparisons in Acme's advertisements were directed at its products. We note, however, that if St. Paul intended the Policy's "advertising injury offense" definition to include only disparaging comparison in which the other producer's product is named, it could have elected to draft its definition more narrowly. *See generally Microtec Research, Inc. v. Nationwide Mut. Ins. Co.*, 40 F.3d 968 (9th Cir. 1994) (determining coverage under two insurance policies, one containing the "of others" language at issue here, and the second containing the narrower language: "material that . . . disparages a person's or organization's goods, products or services").