Gaetano RICCOBONO, Plaintiff,

v.

SEVEN STAR, INC., Roshanara Lalani, Mohammad Lilani, Firoz Lilani and Society Insurance, Defendants-Third-Party Plaintiffs-Respondents,

v.

CAPITOL INDEMNITY CORPORATION, Third-Party Defendant-Appellant,

Santino RICCOBONO, Advanced Roofing Systems, Inc., and Westfield Insurance Company, Third-Party Defendants.

Court of Appeals

*No. 98–2652. Oral argument February 16, 2000.—Decided March 21, 2000.*

2000 WI App 74

(Also reported in 610 N.W.2d 501.)

On behalf of the third-party defendant-appellant Capitol Indemnity Corporation, the cause was submitted on the briefs of *Steven T. Caya* and *Amy E. Wochos* of *Fellows, Piper & Schmidt* of Milwaukee, with oral argument by *Steven T. Caya.*

On behalf of the third-party defendants-appellants-respondents Seven Star, Inc., Roshanara Lalani, Mohammad Lilani, and Firoz Lilani, the cause was submitted on the brief of *Mark J. Goldstein* and *M. Nicol Padway* of *Padway & Padway, Ltd.*, of Milwaukee, with oral argument by *M. Nicol Padway.*

On behalf of the defendant-respondent Society Insurance, the cause was submitted on the brief of *Jeffrey L. Leavell* and *Michael R. Vescio* of *Jeffrey Leavell, S.C.*, of Racine, with oral argument by *Jeffrey L. Leavell.*

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Capitol Indemnity Corporation (Capitol) appeals the judgment construing its commercial general liability policy issued to the Riccobonos' restaurant as providing primary coverage to

the Riccobonos' landlord, Seven Star, Inc., d/b/a/ Howard Johnson hotel (Seven Star), in this suit between Riccobono and Seven Star. Capitol also appeals the trial court's order requiring it to reimburse Society Insurance, another liability insurer for Seven Star that was deemed the excess carrier by the trial court, for attorney fees and costs incurred by Society after Society tendered its defense of Seven Star to Capitol.

¶ 2. After interpreting the insurance policies in question and applying their intended result, we agree that Capitol's policy was intended to be the primary insurer for Seven Star under the circumstances present here, and likewise, Society's policy was intended to be the excess carrier. However, we reverse the trial court's order requiring Capitol to reimburse Society for its costs and attorney fees. The holding in *Elliott v. Donahue*, 169 Wis. 2d 310, 485 N.W.2d 403 (1992), does not encompass the payment of attorney fees and costs from one insurer to another, and the other theories proposed by Society permitting an award of attorney fees and costs do not apply to these facts.

## I. BACKGROUND.

¶ 3. Pursuant to a lease, Gaetano Riccobono and Santina Riccobono operate a restaurant located in Seven Star's hotel. Gaetano Riccobono sued Seven Star, alleging, among other things, that Seven Star had breached the lease; that Seven Star had intentionally interfered with his contract; and that Seven Star was conspiring to force Riccobono to break the lease so that Seven Star could take over the restaurant business. Seven Star had a policy of insurance with Society, and, upon being served with a copy of Riccobono's pleadings, Seven Star tendered its defense to Society. A lawyer hired by Society to represent Seven Star filed an

answer, and, later, Seven Star counterclaimed.[1] The counterclaim contained several causes of action, including an allegation that the Riccobonos were intentionally interfering with the hotel operations. The Riccobonos, who were insured by Capitol, tendered the defense of the counterclaim to Capitol. Capitol then hired a lawyer to defend the Riccobonos.

¶ 4. Approximately sixteen months after Riccobono first began his action against Seven Star, Society formally tendered its defense of Seven Star to Capitol. Society did so because the Capitol policy issued to Ristorante Riccobono also named the Howard Johnson hotel as an additional insured. Riccobono had been required to name the hotel as an additional insured under a clause in Riccobono's lease with Seven Star's predecessor which was still in effect. Capitol, believing that it was not responsible to Seven Star under the policy, intervened and successfully moved to stay the proceedings and to bifurcate the coverage issue from the liability question. Society also intervened in the action and brought a declaratory judgment action.

¶ 5. Society and Capitol both sought a court order determining which, if any, insurance company was under an obligation to provide a defense for or to indemnify Seven Star. The trial court found that both insurance company policies covered Seven Star in its dispute with the Riccobonos and further determined that the wording of the policies required Capitol to be the primary insurer and Society to be the excess carrier

---

[1] Santina Riccobono was not originally a plaintiff in the suit brought against Seven Star. Santina was brought into the suit by way of a third party complaint by Seven Star.

for Seven Star.[2] Capitol then assumed the defense of Seven Star, as well as the defense of Gaetano Riccobono and Santina Riccobono in Seven Star's counterclaims against them.

¶ 6.  Following the trial court's determination, Society then brought a motion seeking to be reimbursed for all of its costs and attorney fees from Capitol. While the trial court refused to order Capitol to reimburse Society for all of its costs and attorney fees, it did determine that Society was entitled to be reimbursed for the costs and attorney fees it expended after the July 1997 date when Society tendered its defense of Seven Star to Capitol.

## II. ANALYSIS.

### A.  *Capitol is the primary insurer.*

¶ 7.  At oral argument, counsel for Capitol conceded that, due to the endorsement in Riccobono's policy including the hotel as an additional insured, its policy provides insurance coverage for Seven Star in the underlying suit between Riccobono and Seven Star. However, Capitol argues that the trial court erred when, in interpreting the policy language found in the two policies, it found Capitol to be the primary insurer. The interpretation of an insurance policy and the existence of coverage under the policy are questions of law which we decide *de novo. See Doyle v. Engelke,* 219 Wis. 2d 277, 284, 580 N.W.2d 245 (1998); *see also Filing v. Commercial Union Midwest Ins. Co.,* 217 Wis. 2d 640, 644, 579 N.W.2d 65 (Ct. App. 1998).

---

[2] On appeal, neither insurance company claims that its policy does not cover Seven Star.

380

¶ 8.   Capitol first argues that the trial court erred in its interpretation that Capitol is the primary insurer under the "other insurance" provisions found in the two policies because, it claims, the "other insurance" provisions were never triggered. Capitol submits that since its insurance policy covers only the corporate entity, Seven Star, the "other insurance" clauses never come into play. This is so, according to Capitol, because the policy does not provide coverage for the officers and directors of Seven Star, whereas the Society policy does; therefore, there is no other insurance. Next, Capitol asserts that its policy covers a different risk than that covered in the Society policy, and again, the "other insurance" provisions found in both policies are not invoked. We are not persuaded by either argument.

■

¶ 9.   Our review of the policies reveals that the Capitol policy clearly covers others besides the corporate entity. Capitol's policy contains the following endorsement: "Name of Person or Organization (Additional Insured): HOWARD JOHNSON, 1716 W. Layton Ave., Milwaukee, WI 53221." The policy also contains a section entitled "WHO IS AN INSURED." It explains:

1.   If you are designated in the Declarations as:

. . . .

c.   An organization other than a partnership or joint venture, you are an insured. *Your "executive officers" and directors are insureds*, but only with respect to their duties as your officers or directors. *Your stockholders are also insureds*, but only with respect to their liability as stockholders.

(Emphasis added.) Thus, the language contained in the policy belies Capitol's argument that the corporate entity, Seven Star, is the only insured. The corporate officers, directors and shareholders of Seven Star (which is the successor corporation to the original Howard Johnson hotel owner) are covered by Capitol's policy, inasmuch as Howard Johnson's owner is an "organization other than a partnership or joint venture."

¶ 10.   With respect to Capitol's second argument, we note that the schedule containing the endorsement naming Howard Johnson as an additional insured contains the following clause:

> WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to *liability arising out of the ownership, maintenance or use of that part of the premises* leased to you and shown in the Schedule and subject to the following additional exclusions:
>
> This insurance does not apply to:
>
> 1.   Any "occurrence" which takes place after you cease to be a tenant in that premises.
>
> 2.   Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

(Emphasis added.) This policy language also runs counter to Capitol's assertions. A review of the pleadings filed by both parties reveals that all the disputes between the parties "arise[ ] out of the ownership, maintenance or use of that part of the premises leased to the [Riccobonos' restaurant]." Consequently, we

382

agree with the trial court that both insurance policies provide coverage for the same parties and the same risk, and an interpretation of the "other insurance" clauses found in the policies was necessary to resolve the dispute.

¶ 11.   Capitol next posits that even if the "other insurance" clauses are triggered, the trial court erred in finding its policy to be the primary insurer because the language of the two clauses are repugnant to one another. Capitol, relying on *Reetz v. Werch*, 8 Wis. 2d 388, 393, 98 N.W.2d 924 (1959), claims that because the clauses directly conflict, the loss must be prorated between the insurers. Society, on the other hand, contends that the "other insurance" provisions found in the policies are not contradictory, and instead, are complimentary. We agree with Society.

¶ 12.   In analyzing the "other insurance" provisions found in the two insurance policies, we are obligated to consider the intent of each of the policies and "give effect to both, if that can reasonably be accomplished." *Faltersack v. Vanden Boogaard*, 39 Wis. 2d 64, 68, 158 N.W.2d 322 (1968). After examining the two policies and giving effect to each policy's intent, we are satisfied that Capitol's policy, under the circumstances presented here, was intended to be the primary policy, and that Society's policy was intended to be the excess policy under the present facts.

¶ 13.   Capitol's "other insurance" clause reads:

**4.   OTHER INSURANCE.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A

or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

*This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.* Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2)** That is Fire insurance for premises rented to you; or

. . . .

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

(Emphasis added.) Society's "other insurance" provision states:

### H.  OTHER INSURANCE

**1.**  *If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.* But we will not pay more than the applicable Limit of Insurance.

**2.**  Business Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.

**3.**  *When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend.* If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

(Emphasis added.) Thus, it is readily apparent after reading the policy language that the authors of the Capitol insurance policy intended it to be the primary insurance carrier, unless the damages being sought resulted from risks not relevant to this dispute. Conversely, Society's policy language contemplated that it would be the excess carrier if another policy covering the identical risk was in existence. Capitol's policy covers the identical risk. Thus, we determine that the trial court correctly concluded that Capitol was the primary insurer and Society the excess carrier. As a result, Cap-

385

itol has the duty to defend both the Riccobonos, Seven Star and its officers, directors and stockholders.

B. *Capitol is not required to reimburse Society for costs and attorney fees incurred in establishing that Capitol was the primary insurer.*

¶ 14. As noted, after the trial court determined that Capitol was the primary insurer, Society brought a motion seeking to be reimbursed for all costs and attorney fees that it paid out prior to being dismissed from the action. Despite Society's request for all of its attorney fees and costs, the trial court, claiming that it was extending the holding in *Elliott*, required Capitol to pay only Society's attorney fees and costs expended after July 17, 1997. The trial court reasoned that Capitol had not been properly notified of the insurance claim which arose in the Riccobonos' and Seven Star's litigation until Society tendered its defense of Seven Star to Capitol on this date. Therefore, the trial court determined that Capitol should not be required to reimburse Society for attorney fees and costs incurred prior to this date. Society argues that it is entitled to its attorney fees pursuant to *Elliott*, and also, it submits, under subrogation principles and the doctrine of equitable indemnification. .

¶ 15. The trial court's ruling that it had authority to award Society its attorney fees and costs by extending the holding of *Elliott* involves a question of law that we review *de novo. See Professional Office Bldgs., Inc. v. Royal Indem. Co.*, 145 Wis. 2d 573, 580, 427 N.W.2d 427 (Ct. App. 1988).

¶ 16. Capitol claims the trial court erred when it concluded that it had authority under the holding in *Elliott* to order Capitol to reimburse Society for these

fees and costs. We agree that *Elliott* does not permit the trial court to assess attorney fees and costs against Capitol under the circumstances present here, nor do we find Society's other arguments persuasive.

¶ 17.   As noted, both the trial court and Society rely on *Elliott* as authority for the trial court's award of attorney fees and costs to Society. Because the factual distinctions found in *Elliott* prevent an award of attorney fees and costs to Society, they bear repeating.

¶ 18.   Michael Donahue, while driving an uninsured automobile owned by David Mikrut, was in a car accident in which Karen Elliott was injured. After Elliott commenced suit against Donahue, he tendered his defense to Heritage Mutual Insurance Company, claiming coverage under his stepmother's policy. The Heritage policy provided coverage for Donahue only if he was operating another's car "with the reasonable belief of having permission to do so." *Elliott*, 169 Wis. 2d at 314. Heritage, believing that Donahue may not have had Mikrut's permission to drive because of a statement Donahue made to the police shortly after the accident, refused to defend Donahue. *See id.* at 314–15, 318. Donahue was then forced to retain independent counsel. Heritage filed a declaratory judgment action. Although the trial court, at Heritage's request, ordered separate trials for the coverage and liability issues, the liability issues were not stayed pending the outcome of the coverage trial. *See id.* at 315. A jury found that Donahue had been driving with Mikrut's permission and Heritage then assumed Donahue's defense and settled the matter. *See id.* Later, Donahue brought a motion seeking to recover his attorney fees and costs for Heritage's breach of contract. The trial court denied Donahue's request to be reimbursed for his attorney fees and costs. *See id.* On appeal, this court decided

387

that Donahue was entitled to costs and attorney fees, but only on his claim for fees and costs generated in defending against the claim for damages, not his claim for attorney fees and costs resulting from the litigation of the coverage issue. *See id.* The case was then appealed to the supreme court.

¶ 19.   On appeal, Donahue claimed that Heritage breached its duty to defend, and therefore, he was entitled to attorney fees and costs. Heritage objected, claiming that it had followed the coverage dispute procedure set forth in *Mowry v. Badger State Mutual Casualty Co.*, 129 Wis. 2d 496, 385 N.W.2d 171 (1986), and thus, had not violated its duty to its insured. Pursuant to the dictates of *Mowry*, Heritage noted that it requested a bifurcated trial on the coverage and liability issues and then immediately assumed the defense of Donahue when the jury determined the underlying factual dispute against Heritage.

¶ 20.   The supreme court reversed. The supreme court declared that an insurance contract is a "unique type of legally enforceable contract" and that the insured is entitled to, not only the payment of damages when purchasing insurance, but also the insured is entitled to a legal defense if required by the terms of the contract. *Id.* at 320. The supreme court explained:

> The insurer that denies coverage and forces the insured to retain counsel and expend additional money to establish coverage for a claim that falls within the ambit of the insurance policy deprives the insured the benefit that was bargained for and paid for with the periodic premium payments. Therefore, the principles of equity call for the insurer to be liable to the insured for expenses, including reasonable attorney fees, incurred by the insured in successfully establishing coverage.

388

*Id.* at 322. Relying on its analysis of the principles of equity, the supreme court concluded that WIS. STAT. § 806.04(8)[3] of the Uniform Declaratory Judgments Act permitted the insured to recover attorney fees incurred in establishing coverage under the insurance policy. *See id.* at 324.

¶ 21.  Society submits that, inasmuch as it, too, brought a declaratory judgment action, and the supreme court, in *Elliott*, found that WIS. STAT. § 806.04(8), of the Uniform Declaratory Judgment Act, permits an award of attorney fees, while § 806.04(10)[4] authorizes costs, that the trial court was authorized to reimburse it for its costs and attorney fees. Society's reliance on *Elliott* is misplaced.

¶ 22.  Although *Elliott* permits the reimbursement of attorney fees and costs, and the case references WIS. STAT. §§ 806.04(8) and 806.04(10) as statutory authority allowing reimbursement, it does so under limited circumstances not present here. In defining the dispute in *Elliott*, the supreme court stated: "The sole issue on review concerns whether an insured may recover attorney fees incurred in successfully defending coverage under an insurance policy." *Elliott*, 169 Wis. 2d at 316. Here, Society is not an insured and,

---

[3] WISCONSIN STAT. § 806.04(8) provides:

**(8)**  SUPPLEMENTAL RELIEF. Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief. If the application be deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

[4] WISCONSIN STAT. § 806.04(10) provides:

**(10)**  COSTS. In any proceeding under this section the court may make such award of costs as may seem equitable and just.

thus, does not appear to fall within the holding of the supreme court.

¶ 23. Further strengthening the argument that *Elliott* is not applicable is the supreme court's rationale for its decision. In deciding that attorney fees and costs were due the insured but not the insurer, the court remarked that:

> The contract of insurance does not contemplate that the insurer should recover attorney fees from the insured even if the insurer prevails in their declaratory judgment action. The insurer has provided no benefit to the insured which would justify recovering the costs of litigation from the insured. Furthermore, the insurer can more easily absorb the expenses of litigation than the insured.

*Id.* at 325 n.3. Extrapolating from the court's reasoning, we note that little benefit was provided to Capitol by Society. Society was under its own independent obligation to defend Seven Star. Although the economic imbalance between an insured and the insurance company does not exist here, following the reasoning of *Elliott,* Society can easily absorb the costs of litigation.

¶ 24. Subsequent case law also supports the narrow reading of the holding in *Elliott*. In *DeChant v. Monarch Life Insurance Co.,* 200 Wis. 2d 559, 547 N.W.2d 592 (1996), the supreme court held that an insured was entitled to attorney fees and bond premiums in a first-party bad faith action as compensatory damages flowing from the insurance company's bad faith. *See id.* at 577. The supreme court remarked:

> We agree with DeChant that our decision in *Elliott* stands for the proposition that courts have the equitable power to award attorney's fees to insureds in

limited circumstances. . . . *Elliott* involved a declaratory judgment action in which the insurer breached its duty to defend. Therefore, although some of the rationale expressed in *Elliott* is supportive, we decline to extend *Elliott* beyond its particular facts and circumstances.

*Id.* at 569. Later, in *Gorton v. Hostak, Henzl & Bichler, S.C.*, 217 Wis. 2d 493, 511–12, 577 N.W.2d 617 (1998), the supreme court reiterated that *Elliott's* holding is limited to insureds. Most recently, this court, relying on *DeChant*, stated in *Ledman v. State Farm Mutual Automobile Insurance Co.*, 230 Wis. 2d 56, 601 N.W.2d 312 (Ct. App. 1999):

> Second, to the extent that the trial court awarded attorney's fees under *Elliott v. Donahue*, [ ] such ruling was erroneous. In *Elliott*, the court determined that the insured was entitled to an award of attorney's fees incurred because the insurer breached its duty to defend. That is not the case here. There was no breach of a duty to defend. Further, our supreme court has declared that *Elliott* should not be extended "beyond its particular facts and circumstances." Attorney's fees should only be awarded in limited circumstances: when an insurer breaches its duty to defend an insured.
> The limited circumstances do not exist here.

*Id.* at 70 (citations omitted). Thus, *Elliott* does not permit attorney fees and cost reimbursement to an insurer.

¶ 25.   Society next argues that it is entitled to attorney fees and costs from Capitol because it was subrogated to Seven Star's rights under the policy language. We disagree.

¶ 26.   Society's argument appears to rest on its interpretation of the language found in the "other

insurance" clause of its policy insuring Seven Star. It borrows from the reasoning in *Elliott* which found that Donahue was also entitled to costs and attorney fees under an "Additional Payments" clause found in the Heritage insurance policy which read: "*we* will pay, in addition to *our* limit of liability . . . [a]ny other reasonable expenses incurred at *our* request." *Elliott*, 169 Wis. 2d at 319. The supreme court found that by requiring Donahue to retain a lawyer to defend him, Heritage had, in effect, invoked the "Additional Payments" clause by requesting Donahue to incur reasonable expenses. *See id.*

¶ 27. Society points to its "other insurance" clause in its policy with Seven Star for support. The relevant section of Society's policy reads:

> When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

Society argues that it is undisputed that other insurance exists; therefore, the wording "but we will be entitled to the insured's rights against all those other insurers" operates to subrogate it to Seven Star's rights. It then reasons that since Seven Star had a right to bring suit against Capitol for its attorney fees because Capitol failed to defend Seven Star, Society stands in the shoes of its insured, and is entitled to its attorney fees and costs. Society's logic is flawed.

¶ 28. The significant difference between the facts in *Elliott* and those present here is that, unlike the insurance company in *Elliott*, Capitol never refused Seven Star's tender of the defense. In fact, Seven Star

392

never requested that Capitol defend them. Rather, Seven Star requested that Society defend them in the Riccobono suit, and it was Society that, after discovering the existence of the additional insurance for Seven Star some time after the Riccobono suit was commenced, notified Capitol that Society wished Capitol to take over the defense of Seven Star. Seven Star had no right to receive reimbursement from Capitol for its failure to defend because Seven Star never asked Capitol to defend it. Nor was Seven Star left without a defense, as Society, having its own policy obligation to defend Seven Star, did so until the coverage dispute was resolved. Thus, the conditions under which Society might have been subrogated to Seven Star's right to attorney fees and costs never came into fruition.

¶ 29. The equities also do not favor Society. The trial court ruled that Capitol had not received notice which would trigger its obligations under the policy until the tender of defense by Society. When Capitol did receive notification of the possibility of coverage under the Riccobono policy, it immediately sought and received a stay of the litigation and promptly sought a trial on the coverage dispute. These are important distinctions. Even if the holding in *Elliott* was broader, the equities here would not lie with Society.

■

¶ 30. In *Elliott*, Heritage refused to accept the defense of Donahue and failed to obtain a stay of the proceedings. *See id.* at 314–15. Here, Capitol obtained a stay of the underlying suit. Further, after the trial court's determination, Capitol immediately assumed the duty to defend.

■

¶ 31. Finally, Society argues that it is entitled to its attorney fees and costs under the doctrine of equita-

ble indemnification. We disagree. First, we note that the "American Rule," which prohibits a successful party in a lawsuit from being reimbursed for its costs or attorney fees unless there is a contract providing for it or a statutory provision allowing it, is still adhered to in Wisconsin. *See Gorton*, 217 Wis. 2d at 510–11; *see also Cedarburg Light & Water Comm'n v. Glen Falls Ins. Co.*, 42 Wis. 2d 120, 124–25, 166 N.W.2d 165 (1969); *Jacobson v. American Tool Cos., Inc.*, 222 Wis. 2d 384, 399, 588 N.W.2d 67 (Ct. App. 1998). Such a provision for reimbursement in this case is not found in the policies, nor is it codified in the statutes.

¶ 32.   Further, the only Wisconsin case cited by Society in support of its equitable indemnification argument does not support Society's argument. In *Hartford Accident & Indemnity Co. v. Worden-Allen Co.*, 238 Wis. 124, 279 N.W. 436 (1941), the supreme court applied the doctrine of equitable indemnification to the payment of damages, not attorney fees and costs. Here, the underlying litigation has yet to be resolved, and no damages have been ordered. The payment of attorney fees and costs in a coverage dispute between two insurance companies has never been awarded in Wisconsin on the basis of the doctrine of equitable indemnification and we decline to do so here.

¶ 33.   For the reasons stated, we can find no applicable theory under which the trial court could lawfully assess Society's attorney fees and costs against Capitol. Accordingly, we reverse and remand this matter to the trial court for the entry of an order consistent with this opinion.

*By the Court.*—Judgment affirmed; order reversed and cause remanded with directions.